# Exhibit C

American Arbitration Association
*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
Chauncey B. Davis
Vice President

2200 Century Parkway, Suite 300, Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

# FAX

Date: January 30, 2006

To
Fredrick J. Sperling, Esq. / Sondra A. Hemeryck, Esq.
Schiff Hardin LLP
Atty for Martin C. Schwartzberg
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606

Deborah L. Thaxter
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Allen Hirschmann

Brian Parker, Esq.
Parker Dumler & Kiely, LLP

John Dapray Muir, Esq.
Ruddy & Muir

Fax Number: 312-258-5600 / 617-345-1300 / 703-812-8365 / 410-625-9309 / 202-337-6459

From: Debra L. Huckins

Number of Pages: (including cover)  13

Re: 16 180 Y 00631 03
    Martin C. Schwartzberg
    and    C.R.I., Inc., William B. Dockser, H. William Willoughby

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

American Arbitration Association
*Dispute Resolution Services Worldwide*

*Southeast Case Management Center*
Chauncey B. Davis
Vice President

2200 Century Parkway, Suite 300. Atlanta, GA 30345
telephone: 404-325-0101 facsimile: 404-325-8034
internet: http://www.adr.org/

January 30, 2006

**VIA FACSIMILE**

Fredrick J. Sperling, Esq.
Schiff Hardin LLP
Atty for Martin C. Schwartzberg
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606

Deborah L. Thaxter
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Re: 16 180 Y 00631 03
    Martin C. Schwartzberg
    and
    C.R.I., Inc., William B. Dockser, H. William Willoughby

Dear Parties:

By direction of the Arbitrators we herewith transmit to you the duly executed Award in the above matter. This serves as a reminder that there is to be no direct communication with the Arbitrator. All communication shall be directed to the Association.

At this time we have verified with the arbitrators that they have submitted all requests for compensation and expenses in this matter. Accordingly, we have conducted a final reconciliation of the finances and are providing each party with a Financial History and Compensation Summary. If a party had any unused compensation deposits, we have issued a refund check that should arrive in the mail shortly. If a party has an outstanding balance, that party will continue to receive cyclical invoices until the balance is paid.

Note that the financial reconciliation reflects costs as they were incurred during the course of the proceeding. Any apportionment of these costs by the arbitrator, pursuant to the Rules, will be addressed in the award and will be stated as one party's obligation to reimburse the other party for costs incurred. Any outstanding balances the parties may have with the AAA for the costs incurred during the arbitration proceedings remain due and payable to the AAA even after the final award is issued, and regardless of the arbitrator's apportionment of these costs between the parties in the award.

Please be reminded the Accelerated Exchange Program is terminated.

We appreciate your selection of the AAA as your alternative dispute resolution provider in this matter. As always, please do not hesitate to contact me if you have any questions.

Sincerely,

Debra L. Huckins
LCC Case Manager
888 320 3506
HuckinsD@adr.org

*Supervisor Information: Allyson C. Calohan, 404 320 5102, Calohana@adr.org*
cc:    Brian C. Parker, Esq.      Allen E. Hirschmann, Esq.      John Dapray Muir, Esq.

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

In the Matter of the Arbitration between

Re: 16 180 Y 00631 03
   Martin C. Schwartzberg ("Claimant")
   and
   C.R.I., Inc., William B. Dockser, H. William
   Willoughby ("Respondent)

## AWARD OF ARBITRATORS

We, the UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration provision contained in Section 11.7 of an agreement entered into by the above-named parties and dated March 25, 1998, and having been duly sworn and having duly heard the proofs and allegations of the parties, unanimously AWARD as follows:

## The Nature of the Dispute

This case was instituted by Martin C. Schwartzberg (sometimes hereinafter referred to as "Schwartzberg" or "Claimant") against C.R.I., Inc. ("CRI"), William B. Dockser ("Dockser"), and H. William Willoughby ("Willoughby"). CRI, Dockser, and Willoughby are hereinafter referred to collectively as "Respondents."

Schwartzberg alleges that the Respondents breached a Definitive Settlement Agreement (the "DSA") dated March 25, 1998, by paying Schwartzberg a share of the "residuals" (monies received primarily from the sale or refinancing of various real estate projects) from just a limited number of entities affiliated with CRI rather than paying residuals from all of the CRI-affiliated entities. Claimant also alleges that Respondents failed to pay him his share of a disposition fee related to a transaction involving a real estate project known as Fontaine Towers. Schwartzberg has requested that the Arbitrators award him damages, and that the Arbitrators issue a declaration that he is entitled to share in the residuals from all future transactions involving any CRI-affiliated entity.

## The Business of CRI

In 1974, Schwartzberg and Dockser formed CRI and, shortly thereafter, Willoughby joined CRI and became one of the principals of the company. During the 1970s and 1980s, the principle business of CRI was the development, syndication, ownership and operation of low and moderate income multi-family housing projects.

CRI's business was conducted through a series of limited partnerships. Although the partnerships were structured in various ways, each real estate project was generally owned by two tiers of limited partnerships – an upper tier or investment partnership and a lower tier or local partnership. CRI typically served as one of the general partners of the upper tier

partnership and a CRI-affiliated partnership typically served as one of the general partners of the lower tier partnership.

Under most, if not all, of the limited partnership agreements, when a partnership sold or refinanced a real estate project, any net proceeds remaining after payment of loans, etc. (the "residuals") were distributed to the partners in accordance with the various partnership documents. The principle issue in this case is whether Schwartzberg is entitled to share in the residuals that are payable to all of the CRI-affiliated partnerships or to only a designated few. To understand the genesis of that dispute, it is necessary to review the terms of a loan transaction involving Oak Tree Investment Company ("Oak Tree"), because a term used in the Oak Tree loan documents was ultimately incorporated into the DSA.

### The Oak Tree Loan

In 1989, CRI borrowed $30,000,000 from Oak Tree. In connection with the loan, CRI executed a Convertible Subordinated Loan Agreement dated January 17, 1989 (the "Loan Agreement", *Exhibit 83*) and a Security Agreement (the "CRI Security Agreement", *Exhibit 82*).

Under the terms of the Loan Agreement and the Security Agreement, CRI and various affiliated entities (collectively referred to in the Loan Agreement as the "CRI Signatories") pledged as collateral for the loan various assets, including any right they had to any residuals from any partnerships in which they held a partnership interest. Those residuals were defined as the "CRI Residuals." Under the terms of the loan documents, when the CRI Signatories received any CRI Residuals, the CRI Signatories were required to place a percentage of the residuals into an escrow account. The proceeds in the escrow account were then used to pay the Oak Tree loan.

The CRI Signatories subsequently executed a document entitled the "CRI Signatories Absolute Assignment" (the "Absolute Assignment"), which was dated as of September 3, 1993 (*Exhibit 52*). Pursuant to the Absolute Assignment, the CRI Signatories assigned to Oak Tree a fifty percent (50%) interest in the CRI Residuals in satisfaction of the remaining indebtedness owed to Oak Tree. Oak Tree subsequently became insolvent and the Resolution Trust Corporation (the "RTC") was appointed as the receiver of Oak Tree. Later, the FDIC succeeded the RTC as receiver. In February of 2002, Dockser, Willoughby and two of Schwartzberg's children executed an agreement to purchase the CRI Residuals back from the FDIC (*Exhibit 63*).

Despite the clear language in the Loan Agreement and Security Agreement, which defined the CRI Residuals as only those residuals payable to the CRI Signatories, Schwartzberg claims that the parties treated the pledge of the CRI Residuals as a pledge of the residuals payable to all CRI-affiliated entities. Claimant argues that in July of 1990, Oak Tree prepared a valuation of the collateral pledged pursuant to the Loan Agreement (*Exhibit 130*). That valuation analyzed the value of the residuals payable to all CRI-affiliated entities. Moreover, before the execution of the Absolute Assignment, the parties directed that the residuals payable to all CRI-affiliated entities be placed in the escrow account established pursuant to the Loan Agreement. After the execution of the Absolute Assignment, the parties paid Oak Tree fifty percent (50%) of the residuals from all CRI-affiliated entities, which practice continued after the RTC and FDIC became the receiver for Oak Tree.

Schwartzberg contends that the above facts establish that the Loan Agreement and Security Agreement were modified by the course of performance between the parties and that

2

Schwartzberg and the Respondents understood the term "CRI Residuals" to mean the residuals payable to _any_ CRI-affiliated entity, not just those payable to the CRI Signatories.

### The Buyout of Schwartzberg

In 1990, Schwartzberg, Dockser, and Willoughby entered into several agreements, pursuant to which Dockser and Willoughby agreed to buy a portion of Schwartzberg's interest in CRI and various related entities (see _Exhibits 131-135_). The buyout agreements gave Schwartzberg the right to receive one-third (1/3) of the cash proceeds of the CRI Residuals, to the extent those residuals were not used to pay the Oak Tree loan (_Exhibit 135_).

In early 1991, the parties executed a First Amendment to WBD-MCS-HWW Buyout Agreements (the "First Amendment") (_Exhibit 91_). In the First Amendment, Dockser and Willoughby agreed, among other things, to exercise their option to purchase the remainder of Schwartzberg's stock in CRI and various related entities. In addition, the First Amendment confirmed, subject to the rights of Oak Tree under the Security Agreement, that Schwartzberg "shall be entitled to receive one-third of the cash or other proceeds from any CRI Residuals attributable to any of the CRI Combined Entities, including CRICO Finance Limited Partnership, all CRICO partnerships and all CRICO corporations." As will appear later, these agreements were superceded by the DSA.

After the execution of both the original buyout agreements and the First Amendment, the Respondents paid Schwartzberg a share of the residuals from all CRI-affiliated entities. Schwartzberg contends that that practice demonstrates that the parties continued to understand that the term "CRI Residuals" meant the residuals from all CRI-affiliated entities. Schwartzberg also contends that language in the First Amendment supports that conclusion because the reference in the First Amendment to "CRI Residuals attributable to any of the CRI Combined Entities" makes no sense if the parties understood the term "CRI Residuals" to mean only residuals payable to the CRI Signatories.

### The Litigation Between the Parties

In January of 1996, Schwartzberg instituted a lawsuit against the Respondents in which he accused the Respondents, among other things, of breaching their fiduciary duties to various partnerships. Schwartzberg also launched a proxy fight in which he sought control of various public and private partnerships. After months of litigation, the parties entered into settlement negotiations, which resulted in the execution of a document dated June 12, 1996 entitled "The Solution," (_Exhibit 65_). The Solution contained the following provision relating to the payment of residuals:

> The residuals (which do not include disposition fees, defined in paragraph 5 and that are covered by the provisions of paragraph 5) due each of CRI, Dockser, Willoughby and Schwartzberg will continue to be paid to each of them as a special limited partner or as a general partner, as the case may be, it being agreed that Schwartzberg is entitled to approximately 33.3% of all residuals and CRI, Dockser and Willoughby are entitled in the aggregate to approximately 66.7% of all residuals.

Although binding, the parties intended that The Solution would be replaced by a "Definitive Agreement" that the parties were to sign on or before June 24, 1996. Unfortunately,

3

the parties' belief that they could quickly draft and execute the Definitive Settlement Agreement proved ill-founded.

## The Drafting of the DSA

Pursuant to The Solution, CRI's attorneys submitted to Claimant a draft "Definitive Settlement Agreement" on December 13, 1996. This draft did not address the issue of residuals, and on January 17, 1997 (some seven months after execution of The Solution), Claimant invoked a provision in The Solution that gave the parties the right to have the final language in the DSA determined by arbitration. After protracted negotiations with respect to the conduct of the arbitration, the parties entered into an "Agreement Regarding Arbitration Process" dated September 9, 1997, calling for an exchange of proposed language for the definitive agreement.

After the parties executed the Agreement Regarding Arbitration Process, Harold Himmelman, Esquire ("Himmelman") was appointed as the arbitrator to conduct the arbitration (the "Himmelman Arbitration"). The purpose of the Himmelman Arbitration was to implement The Solution and to finalize an agreement between the parties setting forth their respective rights and obligations. As part of that process, the parties submitted to each other a series of proposed drafts of the DSA, together with related exhibits (see Exhibits 58-59). Thereafter, Himmelman required the parties to make written submissions regarding the parties' positions on various issues (Exhibits 60 and 457) and to prepare a Master Chart comparing all of the differences in their respective drafts of the DSA. The final version of the Master Chart was 157 pages long and contained a detailed, side-by-side comparison of all of the disputed provisions in the parties' proposed versions of the DSA (Exhibit 347). Himmelman then conducted both evidentiary and non-evidentiary hearings to resolve the differences between the parties. In the end, with the encouragement of Himmelman, the parties were able to agree on language for the DSA, and it was executed by the parties.

The arbitration that resulted in the DSA was a protracted, painstaking process in which every provision in the DSA was reviewed by multiple lawyers and debated and parsed by the parties. An extraordinary amount of time, effort and energy was expended by the parties and Himmelman in order to produce an unambiguous document that would control and govern the relationship between the parties. The process followed in the Himmelman Arbitration provides an important context for reviewing Schwartzberg's present contentions regarding the DSA.

## The Terms of the DSA Relating to Residuals

The DSA contains the following provision relating to residuals:

Section 11.11 Residuals.

(a) Payment of Residuals. The Residuals (which shall not include Disposition Fees) due each of CRI, Dockser, Willoughby and Schwartzberg will continue to be paid to each of them as a special limited partner or as a general partner, as the case may be, it being agreed that Schwartzberg is entitled to 33.3% of the Residuals and CRI, Dockser, and Willoughby are entitled to 66.7% of the Residuals . . . .

4

Article One of the DSA defines Residuals as "... the CRI Residuals, the Dockser Residuals, the Schwartzberg Residuals and the Willoughby Residuals, as defined in that certain Convertible Loan Agreement dated as of January 17, 1989, by and among CRI and certain related parties and Oak Tree Investment Company." The Loan Agreement, in turn, clearly states that the "CRI Residuals shall have the same meaning given such term in the CRI Security Agreement."

The CRI Security Agreement is also very precise, and states that the only Residuals being pledged are those owing to the class defined in the Security Agreement as "CRI Signatories." The CRI Security Agreement provides that the CRI Signatories consist of those entities listed on Exhibit D-3 to the CRI Security Agreement, excluding CRICO Securities Corporation. Exhibit D-3 identifies the CRI Signatories as Capitol Hotel Group, Inc., Construction Management Resources, Inc., CRICO Development Corporation, CRICO Finance, Inc., CRICO Management Corporation, CRICO Mortgage Company, Inc., CRICO Securities Corporation, CRI Fund Management, Inc., C.R.I., Inc., CRI Institutional Asset Management, Inc., CRI Institutional Associates, Inc., and CRI Institutional Real Estate, Inc.

Section 12.2 of the DSA provides that any amendment or modification to the DSA must be in a writing signed by all parties. Section 12.9 of the DSA provides, in substance, that the DSA and all exhibits and documents referred to embody the entire agreement and understanding, i.e., an integration clause.

## Schwartzberg's Contentions Regarding Meaning of the DSA

Schwartzberg contends that when the parties entered into the DSA, the parties did not intend to change the parties' past practices regarding the sharing of residuals. Specifically, Schwartzberg argues that the parties intended for Schwartzberg to continue to share in the residuals payable to all CRI-affiliated entities.

The Arbitrators find that the DSA is a fully integrated agreement that is clear and unambiguous as it applies to Schwartzberg's entitlement to residuals. Specifically, the DSA unambiguously provides that Schwartzberg is only entitled to residuals from the CRI Signatories, being those entities set forth on Exhibit D-3 of the CRI Security Agreement, but not including CRICO Securities Corporation.

The Arbitrators further find that even if the DSA were ambiguous, based upon the extrinsic evidence presented during this arbitration including, but not limited to, the negotiations by the parties during the Himmelman Arbitration, the intent of the parties was that the term "CRI Residuals" would refer only to residuals payable to the CRI Signatories.

In reaching that conclusion, the Arbitrators find that the evidence does not support Schwartzberg's claim that when the parties incorporated into the DSA the definition of "CRI Residuals" used in the Loan Agreement and Security Agreement, the parties intended to incorporate the interpretation of that term that Schwartzberg contends was established by the prior course of performance between the parties. Instead, the Arbitrators find that the parties intended to incorporate the literal definition of the term "CRI Residuals" that is contained in the Loan Agreement and the Security Agreement.

That conclusion is supported by, among other things, the overwhelming evidence that the parties desired to draft a document that would clearly define their respective rights and obligations and the evidence regarding the process that was followed in drafting the DSA.

Based on all the evidence, the Arbitrators find that the parties would not have agreed to intentionally use words in the DSA that had a meaning different from their clear and apparent meaning, especially if that meaning could only be understood by reviewing the parties' past course of conduct.

Moreover, during the negotiation of the DSA, language that would have preserved Schwartzberg's right to receive a share of the residuals from all CRI-related entities was specifically proposed by Schwartzberg and rejected by the Respondents. On September 23, 1997, Schwartzberg's attorney submitted a draft Definitive Settlement Agreement (*Exhibit 58*). That draft contained a new Article Four, "Residuals," reading, in part, as follows:

> 4.1 The Residuals (which do not include Disposition Fees) due each ... will continue to be paid to each of them as a special limited partner or as a general partner, as the case may be. it being agreed that Schwartzberg is entitled to approximately 33.3% of *all* Residuals and CRI, Dockser, and Willoughby, are entitled, in the aggregate, to approximately 66.7% of *all* residuals. *[emphasis added]* . . .
>
> 4.2 Pursuant to the First Amendment to the Buy Out Agreement, dated January 1, 1991, the parties hereby confirm their Agreement that Schwartzberg shall be entitled in perpetuity to receive one-third of the cash or other proceeds of any CRI Residuals attributable to any of the CRI Combined Entities, including CRICO Finance Limited Partnership, all CRICO partnerships and all CRICO corporations.

The language proposed by Schwartzberg was rejected, however, in favor of the language now found in Section 11.10 of the DSA.

In addition, in the draft DSA submitted by Schwartzberg's counsel on September 23, 1997, Schwartzberg specifically proposed that various prior agreements between the parties would survive the execution of the DSA (*see § 11.6 of Exhibit 58*). A number of those agreements expressly addressed the issue of residuals. Had those agreements survived the execution of the DSA, the agreements would have preserved Schwartzberg's right to share in residuals from all CRI-related entities. However, the reference to those agreements was deleted from the final version of the DSA (*see § 11.6 of Exhibit 62*).

The Arbitrators also find that the evidence presented was insufficient to support Schwartzberg's position that the phrase "... will continue to be paid..." that is found in Section 11.10 of the DSA was intended by the parties to signify the specific kind or amount of residuals to which Schwartzberg would be entitled. In addition, the Arbitrators find that the evidence presented was insufficient to establish that Schwartzberg's counsel relied on assurances from the Respondents' counsel that the language ultimately incorporated into the DSA did not change the prior agreement between the parties as it related to residuals.

The Arbitrators also conclude that the evidence regarding Respondents' course of conduct after the execution of the DSA does not support Schwartzberg's claim. Schwartzberg presented evidence that after execution of the DSA, the Respondents made payments to Schwartzberg from some (but not all) CRI-affiliated entities that were not CRI Signatories. The evidence established that those payments were made by unilateral mistake, and the Arbitrators

6

find that such payments do not reflect the parties' intentions at the time the DSA was executed or a subsequent modification of the DSA.

### The Dispute Over the Disposition Fee

The Claimant also avers that he was entitled to share in the "Disposition Fee" received by the Respondents in connection with a transaction involving the Fontaine Towers project. The Arbitrators find that the subject fee was not a "Disposition Fee" paid incident to a sale, refinancing, or disposition of the Fontaine Towers project. The Arbitrators find that the fee was a consulting fee charged by CRI for services that allowed the partnership that owned the Fontaine Towers project to release accumulated reserves that had been generated from the excess cash flow from the property. These fees resulted from CRI's buy-out of Fontaine Towers' former general partner, who would otherwise have been entitled to such fees. Accordingly, the Arbitrators find that Claimant is not entitled to a share of the fee from Fontaine Towers.

### Conclusion

In conclusion, the Arbitrators find, from the evidence presented, that Respondents have not breached the terms of the DSA. Further, the Arbitrators conclude that the term "CRI Residuals," as used in the DSA, refers only to residuals payable to the CRI Signatories, being those entities set forth on Exhibit D-3 of the Oak Tree Loan Agreement, but not including CRICO Securities Corporation. Therefore, in response to the parties' request for declaratory or other relief, the Arbitrators declare and award as follows:

(a)  The Claimant's request for damages related to the Respondents' alleged failure to pay Schwartzberg his share of any past Residuals and Disposition Fees is denied.

(b)  Under the DSA, Claimant is entitled to 33.33% of any Residuals received by the entities listed in Exhibit D-3 to the Oak Tree Loan Agreement, excluding CRICO Securities Corporation.

(c)  Under the DSA, Claimant is not entitled to any share of the Residuals received by any CRI-affiliated entity, except as described in the proceeding paragraph.

(d)  Each of the parties shall be responsible and pay for his or its own fees and expenses related to this proceeding.

(e)  The administrative fees and expenses of the American Arbitration Association totaling ELEVEN THOUSAND TWO HUNDRED FIFTY DOLLARS AND NO CENTS ($11,250.00) shall be borne equally by the parties, and the compensation and expenses of the arbitrators totaling FIFTY THOUSAND ONE HUNDRED FIFTY EIGHT DOLLARS AND SIXTY EIGHT CENTS ($50,158.68) shall be borne equally by the parties. Therefore, Respondent, jointly and severally, shall reimburse Claimant the sum of FIVE THOUSAND SIX HUNDRED TWENTY FIVE DOLLARS AND NO CENTS ($5,625.00), representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

This Award is in full settlement of all claims submitted in this Arbitration.

7

All claims or counterclaims not expressly granted herein are hereby denied.

Brian C. Parker, Chairman

Allen Hirschmann

John Dapray Muir

DATED: January 30, 2006

*1/26/2006*

Martin C. Schwartzberg

and

C.R.I., Inc., William B. Dockser, H. William
Willoughby

| | |
|---|---|
| Case Manager: | DEBRA HUCKINS |
| Case Number: | 16 180 Y 00631 03 |
| Close Type: | Awarded |

| | | |
|---|---|---|
| Total Administrative Fees and Expenses | $ | 11,250.00 |
| Total Neutral Compensation and Expenses | $ | 50,158.68 |

*Note that the financial reconciliation reflects costs as they were incurred during the course of the proceeding. Any apportionment of these costs by the arbitrator, per section R-43 of the rules, will be addressed in the award and will be stated as one party's obligation to reimburse the other party for costs incurred. Any outstanding balances the parties may have with the AAA for the costs incurred during the arbitration proceedings remain due and payable to the AAA even after the award is issued, and regardless of the arbitrator's apportionment of these costs between the parties in the award.

## MARTIN C. SCHWARTZBERG

### Administrative Fees and Expenses:

| | | |
|---|---|---:|
| Filing Fees: | $ | 8,000.00 |
| Case Service Fees: | $ | 3,250.00 |
| Hearing Room Expenses: | $ | 0.00 |
| AAA Hearing Room Rental: | $ | 0.00 |

Your Share of Administrative Fees and Expenses: $ 11,250.00

Amounts Paid for Administrative Fees and Expenses: $ 11,250.00

Balance Administrative Fees and Expenses: $ 0.00

### Neutral Compensation and Expenses:

| | | |
|---|---|---:|
| Brian C. Parker: | $ | 21,411.06 |
| Allen E. Hirschmann, Esq.: | $ | 13,769.15 |
| John Dapray Muir, Esq.: | $ | 14,978.47 |

Your Share of Neutral Compensation and Expenses: $ 25,079.34

Amounts Paid for Neutral Compensation and Expenses: $ 27,075.00

Balance Neutral Compensation and Expenses: $ (1,995.66)

Party Balance: $ (1,995.66)

| C.R.I., INC., WILLIAM B. DOCKSER, H. WILLIAM WILLOUGHBY | |
|---|---|

Administrative Fees and Expenses:

| | |
|---|---|
| Filing Fees: $ | 0.00 |
| Case Service Fees: $ | 0.00 |
| Hearing Room Expenses: $ | 0.00 |
| AAA Hearing Room Rental: $ | 0.00 |

| | |
|---|---|
| Your Share of Administrative Fees and Expenses: $ | 0.00 |
| Amounts Paid for Administrative Fees and Expenses: $ | 0.00 |
| Balance Administrative Fees and Expenses: $ | 0.00 |

Neutral Compensation and Expenses:

| | |
|---|---|
| Brian C. Parker: $ | 21,411.06 |
| Allen E. Hirschmann, Esq.: $ | 13,769.15 |
| John Dapray Muir, Esq.: $ | 14,978.47 |
| Your Share of Neutral Compensation and Expenses: $ | 25,079.34 |
| Amounts Paid for Neutral Compensation and Expenses: $ | 24,375.00 |
| Balance Neutral Compensation and Expenses: $ | 704.34 |

| | |
|---|---|
| Party Balance: $ | 704.34 |